# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re** <br><br> SHANE LYLE SCOTT, <br><br> **Debtor.** | **Bankruptcy Case** <br> **No. 05-41825-JDP** |

_____

### MEMORANDUM OF DECISION
_____

**Appearances:**

    Rocky Wixom, Idaho Falls, Idaho, Attorney for Debtor.

    James A. Spinner, Pocatello, Idaho, Attorney for Trustee R. Sam Hopkins.

_____

*Introduction*

Chapter 7[1] Debtor Shane Lyle Scott asks the Court to grant him relief

---

[1] All chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1330, and references to "Rule" are to the Federal Rules of Bankruptcy Procedure, Rules 1001– 9036, as they existed prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 108-9, 119 Stat. 23 (Apr. 20, 2005). References to "Civil Rule" are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION - 1

from the terms of an order approving a compromise with Trustee R. Sam Hopkins ("Trustee") concerning his exemption claims.  Based upon events occurring after entry of the order, it is clear that Debtor's goal in settling with Trustee was not realized.  However, Debtor has offered no proper justification to disturb the compromise.

## *Procedural History*

Debtor filed his bankruptcy petition on August 12, 2005.  Docket No. 1.  In his schedule of his assets, he listed an unliquidated tort claim against Bannock County, Idaho for personal injuries which he valued at $1,000,000, and a worker's compensation claim which he estimated at $100,000.  Docket No. 1.  On the Schedule C list of exempt property, Debtor asserted the tort claim was exempt in the amount of $900,000 under Idaho Code § 11-604(1)(c), and that the worker's compensation claim was exempt in the amount of $100,000 pursuant to Idaho Code § 72-802.  Docket No. 1.

Trustee objected to Debtor's claims of exemption.  To resolve the objection, Debtor and Trustee stipulated that the exemption claims be

MEMORANDUM OF DECISION - 2

disallowed, but without prejudice, such that Debtor could assert an amended exemptions after the tort and worker's compensation claims had been liquidated. Docket No. 11.

In October, 2008, a comprehensive settlement stipulation was reached by Debtor, Trustee, and Bannock County resolving Debtor's tort and worker's compensation claims against Bannock County, as well as his exemption claims to the cash settlement (the "Compromise"). Docket No. 42.

After the Compromise was signed, but prior to its approval by the Court, Debtor amended his Schedules B and C to reflect the terms of the Compromise, and to again claim any recovery exempt. Docket No. 38. Trustee promptly objected to Debtor's claim of exemption in the settlement amount, even though the exemption issues were resolved in the Compromise, on the grounds that the Court had not yet approved the settlement. Docket No. 39. After notice and a hearing held on December 9, 2008, the Court approved the Compromise ("Approval Order"). Docket No. 51 .

MEMORANDUM OF DECISION - 3

Under the Compromise, after payment of special counsel's fees and costs, and amounts due to Debtor's health care providers, $101,316.27 of the settlement funds remained.  From this sum, Debtor and Trustee agreed that $30,000 would be paid to the bankruptcy estate to be used to pay Debtor's creditors, and $71,316.27 would be distributed to Debtor in satisfaction of his exemption claims.  Debtor apparently intended to use the money he would receive to pay living expenses, since he could only work part-time, and for a future neck surgery.

At the time of the negotiations concerning the Compromise, Debtor and Trustee were aware that a proof of claim for unpaid child support would likely be filed in Debtor's bankruptcy case, and if so, it would be paid by Trustee from the funds in the bankruptcy estate.  However, because the hearing to approve the Compromise fell on the claims bar date, at the time of the hearing, no support claim had yet been filed.  A timely claim for the child support was filed later that day by Idaho Child Support Services, acting on behalf of the State of Washington, in the amount of $12,591.07.  Claims Register, No. 7.

MEMORANDUM OF DECISION - 4

The agreed amount of the settlement funds were disbursed to Debtor and Trustee. But at this point in time, events took an unexpected turn.

In January, 2009, before Trustee could propose to close the bankruptcy estate and pay the child support claim, the State of Washington served a garnishment order relating to the child support on the bank at which Debtor had deposited his share of the settlement proceeds. As a result, $12,490.84 of his funds was seized and paid over to the creditor.

In response to the creditor's actions, Debtor filed what he styled as his "Second Amended Objection to Claim and Motion to Change Distribution." Docket No. 65. In his motion, Debtor asks the Court to "<u>order Trustee to either pay the referenced claim for child support</u>, or, if the Court finds the claim has been fully satisfied, the <u>Trustee should pay debtor the amount of the claim</u> . . . ." *Id.* (emphasis in original).[2] In other

---

[2] This pleading also objected to allowance of the child support proof of claim. Apparently because the proof of claim was amended to reflect the payment made via the garnishment, Debtor withdrew his objection to the amended proof of claim. *See* Minute Entry, Docket no. 66  To be clear, another nonpriority claim for $197.60 for attorneys fees was by Idaho Child Support Services and remains unpaid. Claims Register, No. 8. No objection has been made to that proof of claim.

MEMORANDUM OF DECISION - 5

words, because the bulk of the original priority child support claim was paid via the creditor's garnishment of Debtor's bank account, Debtor contends that Trustee should be ordered to pay the amount that would have been used to satisfy that claim to him. Trustee opposes Debtor's motion and argues he should be able to use all funds in the bankruptcy estate to pay creditor claims.

The Court conducted a hearing on Debtor's motion on June 24, 2009. At the hearing, the parties stipulated that the Court could consider a transcript of the hearing concerning approval of the Compromise. The Court has now considered the transcript, the arguments and submissions of the parties, the testimony presented at the hearing, as well as the applicable law. The Court concludes Debtor's motion should be denied.[3]

*Analysis and Disposition*

In support of his motion, Debtor contends that the unanticipated garnishment of his bank account by the child support creditor before its

---

[3] This Memorandum constitutes the Court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052; 9014.

MEMORANDUM OF DECISION - 6

claim could be paid by Trustee resulted in a partial failure in the consideration for his consent to the Compromise of the tort/worker's compensation actions. Debtor therefore seeks relief from the terms of the Compromise allowing the bankruptcy estate to retain $30,000 for payment of creditors in his bankruptcy case, and the Court's order approving the Compromise. He relies upon Civil Rules 60(b)(5) and (b)(6)[4], made applicable in bankruptcy proceedings pursuant to Rule 9024, as the basis for this Court's authority to grant him relief.

1. Civil Rule 60(b)(5).

Civil Rule 60(b)(5) provides that the Court may grant relief to a party from a final judgment or order if "(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5).

Modification of an order pursuant to Civil Rule 60(b)(5) involves a

---

[4] When referring to the Federal Rules of Civil Procedure, the Court will hereinafter designate them as "Civil Rules".

MEMORANDUM OF DECISION - 7

two-step process. First, the movant must demonstrate that a significant change in either factual conditions or in law has occurred. *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 357, 384 (1992); *United States v. Asarco Inc.*, 430 F.3d 972, 979 (9th Cir. 2005). If so, the second step requires the Court to determine whether the proposed modification of the order is "suitably tailored to resolve the problems created by the changed factual or legal conditions." *Asarco*, 430 F.3d at 979 (citing *Rufo*, 502 U.S. at 391). Although *Rufo* involved a consent decree, the Ninth Circuit has held that the standard announced therein applies to all Civil Rule 60(b)(5) motions brought on equitable grounds. *Securities and Exch. Comm'n v. Coldicutt*, 258 F.3d 939, 942 (9th Cir. 2001) (quoting *Bellevue Manor Assoc. v. United States*, 165 F.3d 1249, 1255 (9th Cir. 1999)). A request for relief from an order under Civil Rule 60(b) is equitable in nature, and is committed to the sound discretion of the Court. *Harvest v. Castro*, 531 F.3d 737, 748 (9th Cir. 2008); *In re AICO Recreational Prop., LLC*, 03.2 I.B.C.R. 105, 106 (Bankr. D. Idaho 2003).

Has Debtor shown that, after approval of the Compromise, there

MEMORANDUM OF DECISION - 8

was "a significant change either in factual conditions or in law[?]" *Coldicutt*, 258 F.3d at 942 (quoting *Rufo*, 502 U.S. at 384). *Rufo* held that modification of a judgment:

> may be warranted when changed factual conditions make compliance with the decree substantially more onerous . . . . Modification is also appropriate when a decree proves to be unworkable because of unforeseen obstacles, or when enforcement of the decree without modification would be detrimental to the public interest.

*Rufo*, 502 U.S. at 384-85 (internal citations omitted). Relief from a court order should not be granted, however, simply because a party finds "it is no longer convenient to live with the terms" of the order. *Id*. at 383.

Here, the Court declines to find that a significant change in the law or the factual conditions has occurred sufficient to justify the relief requested by Debtor. In reaching this decision, the Court has considered not only the express language included in the stipulation giving rise to the Compromise, but also the statements of counsel for the parties at hearing on the parties' motion to approve the Compromise. Taken together, it is

MEMORANDUM OF DECISION - 9

clear that the Compromise purported to allot $30,000 of the settlement funds to the bankruptcy estate free from any further claim of exemption by Debtor, and that the parties intended that Trustee use those funds to pay the claims of creditors in the bankruptcy case. While the filing of a claim for child support was contemplated, and even discussed by the parties at the hearing, at that time, no such claim had been filed, and the precise amount of such claim was in question. Importantly, at no time did Trustee agree, in writing or through his attorney's statements at the hearing, to pay any specific amount to the State of Washington for a child support claim. The Trustee's promise to Debtor was, simply, to use the $30,000 to pay creditor claims filed in the bankruptcy case according to the Code.

As it turned out, a proof of claim for child support was indeed filed in the bankruptcy case, but the State of Washington elected a different method of securing payment than waiting to receive a disbursement from Trustee. But it is undisputed that there are plenty of other allowed claims of creditors eligible for payment from the bankruptcy estate. While it appears the State of Washington's collection efforts altered which creditors

MEMORANDUM OF DECISION - 10

will be paid by Trustee, the basic purpose of the Compromise remains intact: Trustee will use the $30,000 to pay claims, and Debtor has had access to and use of the funds he received under the terms of the Compromise.

Debtor contends there was a "failure of consideration" necessary to support the Compromise, but this is incorrect. Debtor agreed to forego any claim of exemption to the tort/worker's compensation recovery to the extent of $30,000, in return for Trustee's agreement to drop his objection to Debtor's exemptions claims. Debtor seems to ignore that, in the absence of the Compromise, Trustee may conceivably have been successful in securing an even larger portion of the settlement proceeds for the bankruptcy estate. As discussed above, that Debtor now finds the terms of the Compromise inconvenient, or ineffective to achieve his purposes, this is not a proper ground upon which this Court may grant relief from the order approving the Compromise. *Rufo*, 502 U.S. at 383.

Debtor also cannot satisfy the second prong under *Rufo*. The relief Debtor seeks is not "suitably tailored to resolve the problems created by

MEMORANDUM OF DECISION - 11

the changed factual or legal conditions." What Debtor requests, in practical terms, is to step into the shoes of the child support creditor and receive the payment he intended be made from the bankruptcy estate to the State of Washington. While he considers this an equitable solution to his problems, he thinks little about the prejudice resulting from this approach to the other parties to this bankruptcy case: his other creditors. Debtor cites no provision of the Code which would allow him to, effectively, be subrogated to the rights of the priority child support creditor, and the Court confidently concludes there is no such statutory authority for Debtor's proposal.[5] In the exercise of its discretion, the Court concludes Debtor's "remedy" is not an equitable one under these facts.

    2. Civil Rule 60(b)(6).

---

[5] The Code provides for the subrogation of a claim that is paid during a bankruptcy case. But by its plain language, § 509, the Code provision authorizing subrogation, is limited to "an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor . . . ." 11 U.S.C. § 509(a). Here, Debtor, no a "co-debtor" paid the creditor's claim. Thus, § 509 is inapplicable.

MEMORANDUM OF DECISION - 12

Civil Rule 60(b)(6) provides that the Court "may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The courts have construed this provision strictly. Civil Rule 60(b)(6) applies to address errors or actions beyond the party's control. *In re Bott*, 03.2 I.B.C.R. 125, 126 (Bankr. D. Idaho 2003) (citing *Cmty. Dental Servs. v. Tani,* 282 F.3d 1164, 1170, n. 12 (9th Cir. 2002)); *see also, In re Anderton*, 00.1 I.B.C.R. 5, 8 (Bankr. D. Idaho 2001) (citing *United States v. Washington*, 98 F.3d 1159, 1163 (9th Cir. 1996)) ("[Civil R]ule 60(b)(6) is only to be applied in rare cases where a party was prevented by 'extraordinary circumstances' from seeking timely prevention or correction of an erroneous judgment."). To qualify for relief under Civil Rule 60(b)(6), a moving party must "show both injury and that circumstances beyond its control prevented timely action to protect its interests. Neglect or lack of diligence is not to be remedied through [Civil] Rule 60(b)(6)." *Bott*, 03.2 I.B.C.R. at 126 (citing *Lehman v. United States*, 154 F.3d 1010, 1017 (9th Cir. 1998)) (internal citations omitted).

MEMORANDUM OF DECISION - 13

While it is clear that the State of Washington's actions in seizing his bank account were beyond Debtor's control, his deposit of the settlement funds in an unsheltered bank account was not.  While the Court can only speculate as to the techniques Debtor and his counsel could have employed to ensure that Debtor's portion of the settlement proceeds were protected from the nondischargeable claims of the child support creditor pending payment by Trustee, it seems clear that placing the money in an account subject to garnishment was Debtor's decision.  That the State of Washington, upon discovery of a pot of money belonging to Debtor would garnish it, was neither extraordinary nor unforeseeable.

In addition, Debtor can not demonstrate he suffered an "injury" under a strict view of the Approval Order.  As explained above, Debtor will receive exactly what he bargained for in the Compromise.  Contrary to Debtor's position, all material elements of the Compromise will be realized.  The intervening actions of the State of Washington occurred *after* the terms of the Compromise were fulfilled by splitting the injury recovery between Debtor and the bankruptcy estate.

MEMORANDUM OF DECISION - 14

The Court's decision to decline relief here is bolstered by the policy that settlement agreements are important and encouraged, especially in bankruptcy proceedings, "where the preciousness of both time and money is accentuated." *In re AICO*, 03.2 I.B.C.R. at 107. As the case law observes:

> This Court has repeatedly emphasized the importance of strict compliance with stipulations negotiated by parties in pending bankruptcy cases. Such stipulations play a critical role in the bankruptcy process. If obedience to the promises made in connection with a bankruptcy case is easily excused, negotiations between parties will be chilled and the process of obtaining cooperation and consensus in bankruptcy cases will be impaired. The Court declines to compromise the integrity of such agreements without a compelling reason to do so.

*In re Blele*, 03.1 I.B.C.R. 85, 86 (Bankr. D. Idaho 2003) (citations omitted).

For these reasons, the Court concludes that Civil Rule 60(b)(6) is of no help to Debtor in this case.

### *Conclusion*

The Court is sympathetic to Debtor's predicament. Simply put, the settlement of his claims against Bannock County and his exemption claims

MEMORANDUM OF DECISION - 15

with Trustee did not turn out as he expected. However, to grant Debtor relief under these circumstances would not only require an impermissibly expansive reading of Civil Rule 60(b), but would also result in invalidating a negotiated settlement agreement where Trustee and Debtor were not the sole parties. While Debtor has suffered an adverse result, in the exercise of its discretion, the Court declines to intervene.

Debtor's Second Amended Objection to Claim and Motion to Change Distribution will be denied. A separate order will be entered.

Dated: September 10, 2009

Honorable Jim D. Pappas
United States Bankruptcy Judge